# Exhibit "1"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:

ROBERT WALKER, and                        Case No. 20-11431-EPK
TAMIKO PEELE,

                                                             Chapter 13

    Debtors.
_____/

**EDUCATIONAL CREDIT MANAGEMENT CORPORATION'S MOTION FOR**
**REHEARING OF ORDER SUSTAINING OBJECTION TO CLAIM NO. 2**

Creditor Educational Credit Management Corporation ("ECMC"), the owner and holder of the student loan debt that is the subject of Proof of Claim 2-1 ("Claim No. 2"), pursuant to Federal Rule of Civil Procedure 60(b), as incorporated by Federal Rule of Bankruptcy Procedure 9024, moves the Court for rehearing of the Court's *Order Sustaining Objection to Claim Filed by Educational Credit Management Corporation* (the "Order)(D.E. 64). In support thereof, ECMC states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

1. ECMC is a private, nonprofit corporation and guaranty agency, headquartered in Minneapolis, Minnesota. ECMC provides specialized guarantor services to the Department of Education ("ED") and other guaranty agencies pursuant to the Federal Family Education Loan Program ("FFELP"), including accepting transfer of title to certain student loan accounts from ED and other FFELP guaranty agencies on which the student loan borrower has filed bankruptcy.

2. On March 3, 2020, ECMC filed Claim No. 2 in the amount of $43,598.20 with respect to a non-dischargeable consolidated federally-backed student loan that was made to Debtor Tamiko Peele ("Tamiko") under the FFELP and that is owe ECMC. As

1

set forth in the Proof of Claim, notices with respect to Claim No. 2 were to be sent to Educational Credit Management Corporation, P.O. Box 16408, St. Paul, MN 55116-0408.

3. Effective March, 2020, due to the Coronavirus pandemic, ECMC's corporate offices, which are located in Minneapolis, MN, were closed and its employees have been remotely since that time.

4. On July 29, 2020, ECMC's legal department received a copy of the Court's Order, which reflected that the Court had sustained the "Debtor's Objection to Claim Filed by Educational Credit Management Corp., Claim No. 2 (DE#47)." The Order provided that the claim was stricken and disallowed. The Order reflected that it was heard on July 4, 2020, and was entered on July 17, 2020.

5. Upon learning of the entry of the Order, on August 10, 2020, the attorney in ECMC's legal department overseeing matters in the state of Florida contacted ECMC's undersigned outside counsel, John Eaton, who represents ECMC in bankruptcy matters in the state of Florida. Mr. Eaton checked the docket on the evening of August 10, 2020, and discovered that on June 15, 2020, the Debtors filed their *Objection to Claim on Shortened Notice* (the "Objection")(D.E. 47) in which the Debtors objected to Claim No. 2 that was filed by ECMC.[1] In the Objection, the Debtors objected to Claim No. 2 on the following basis: "Sustain and Strike. The Debtors believe this debt has been discharged through the Total Permanent Disability discharge, provided by the US Department of Education." No exhibits were attached to the Objection, including no documentary

---

[1] Mr. Eaton left for Jacksonville, Florida on the morning of August 11, 2020 in order to get his son checked in to his freshman dormitory for the Fall, 2020 semester. Nevertheless, Mr. Eaton immediately began an investigation into the facts, and prepared a draft of the instant motion.

2

evidence to support the Debtors' contention that Tamiko had received a total permanent disability discharge from ED.

6. The Objection contained a "Service List," and included ECMC and the address set forth in the Proof of Claim. However, the Objection does not include any Certificate of Service certifying that a copy of the Objection was, in fact, served on ECMC. That being said, the Docket reflects that a Notice of Hearing on the Objection for July 14, 2020 at 1:00 p.m. (D.E. 48) was served on ECMC at the address in Claim No. 2. *See* D.E. 51.

7. Pursuant to 11 U.S.C. § 502(a) and Bankr. R. 3001(f), a properly filed proof of claim is *prima facie* evidence of the validity and amount of the claim. The Objection states that the Debtors believe that Tamiko has received a TPD discharge of her student loan debt owed to ECMC. However, the Objection does not contain any evidence to support that contention.

8. Moreover, after receiving a copy of the Order, ECMC's legal department checked ECMC's records.[2] Notwithstanding what the Certificate of Service for the Objection states, ECMC does not have any record of anyone at ECMC having received a copy of the Objection or the Notice of Hearing. *See* Klisch Declaration at ¶5. Instead, according to ECMC's records, the first time ECMC ever learned of any Objection with respect to its claim is when the Order was received on July 29, 2020, only two (2) days before it became final. *Id*. More importantly, at this time, ECMC's records did not

---

[2] Attached hereto as Exhibit "1" is the Declaration of Kerry Klisch, a litigation specialist for ECMC, reflecting the search that Mr. Klisch effectuated and what is reflected in ECMC's records.

3

reflect anything showing any final approval of a Total Permanent Disability ("TPD") application for Tamiko's loan to ECMC having been granted. *Id.* at ¶8.

9. For that reason, Ms. Klisch contacted Nelnet, the servicer for Tamiko's FFELP Loan, with respect to the contention that she had received a TPD discharge. *Id.* at ¶9. ECMC learned that Tamiko was approved for a TPD discharge in 2015, but the FFELP Loan was reinstated in May of 2017 because Tamika failed ED's three-year income monitoring period. Specifically, Tamiko did not provide ED or the loan servicer with income verification for the time period of January 8, 2016 to January 7, 2017.[3] *Id.*

10. ECMC further understands that the one-year period that Tamiko had to appeal that decision ended in May of 2018. Therefore, in order to obtain a TPD discharge of the FFELP Loan, Tamiko will need to reapply to have the loan discharged. *Id.* at ¶10.

11. In addition, ECMC's undersigned counsel reviewed a copy of the Debtors' *Schedules of Assets and Liabilities* (the "Schedules") (D.E. 8) that were filed with the Court on February 13, 2020. In the Schedules, the Debtors listed a student loan debt as follows: "US Dept. of Education, ECMC/Bankruptcy, P.O. Box 16408, St. Paul, MN 55116." Schedules at p. 22. The amount of this student loan was listed as $35,054.00, and having been "Opened 11/05 Last Active 12/12/19." This student loan was not listed

---

[3] If a borrower receives a TPD discharge, the borrower is required to provide ED and/or the loan servicer with income verification for a period of three years after the discharge is granted to confirm that the borrower has not earned income in excess of the federal poverty guidelines amount for a family size of 2 in the borrower's respective state, regardless of his or her actual family size. *Id.* at n. 2.

4

as disputed, contingent, or unliquidated, and nothing in the Schedules indicated anything about a TPD discharge.[4]

12. In this case, rehearing should be granted, and the Order vacated, and ECMC's Claim No. 2 allowed in the full amount as filed.

## ARGUMENT

In this case, the Court should grant rehearing and vacate the Order. Fed. R. Civ. P. 60(b)(1) authorizes the setting aside of final judgments and orders which result from "mistake, inadvertence, surprise, or excusable neglect." Whether inadvertence and excusable neglect exist "is an equitable inquiry turning on 'all relevant circumstances,' and the pertinent factors include 'the danger of prejudice to the opposing party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith.'" *Grant v. Pottinger-Gibson*, 725 F. App'x 772, 775 (11th Cir. 2018) (quoting *Cheney v. Anchor Glass Container Corp.*, 71 F.3 848, 850 (11th Cir. 1996)).[5]

All the requisite elements of Fed. R. Civ. P. 60(b)(1) are present in this case. ECMC's offices have been closed, and its employees have been working from their respective homes, since March, 2020 due to the ongoing coronavirus or COVID-19 pandemic. A the Klisch Declaration reflects, ECMC's records show that ECMC never

---

[4] The Debtors also listed two other student loans for Tamiko at p. 22 for the Department of Education / Nelnet. Again, both of those were shown as having been opened in November 2020, and neither was shown as being disputed, contingent or unliquidated.

[5] When seeking to set aside a default judgment for inadvertence and excusable neglect, the movant must demonstrate (1) that it had a meritorious defense that might have affected the outcome, (2) that granting the motion would not result in prejudice to the non-defaulting party, and (3) that a good reason existed for failing to timely respond to the complaint. *Id.*; *see also Valdez v. Feltman*, 328 F.3d 1291, 1295 (11th Cir. 2003).

5

received a copy of the Objection or the Notice of Hearing. Instead, the first time that ECMC's legal department ever learned of the Objection or the Notice of Hearing was when that department received a copy of the Order on July 29, 2020, only two (2) days before the Order became final. ECMC's attorney who oversees bankruptcy matters for ECMC in the State of Florida retained ECMC's undersigned outside local counsel on August 10, 2020 once he learned of the Order, and investigated the circumstances as to the reason why a response to the Objection was never filed. ECMC's undersigned counsel swiftly prepared and filed the instant motion for rehearing after it was confirmed that ECMC never received the Objection or the Notice of Hearing.

In fact, as noted above, ECMC was not even aware of the Objection and the relief that was requested by the Debtors in the Objection until the Order was received. While the docket reflects that the Debtors served a Notice of Hearing on ECMC on or about June 15, 2020, there is nothing in the docket to reflect that a copy of the Objection was ever served on ECMC. And, as the Klisch Declaration makes clear, ECMC's records do not reflect that the Objection or Notice of Hearing were ever received by ECMC.

But regardless, under the circumstances, cause exists to grant rehearing in order to correct clear error and to manifest injustice. Specifically, the basis of the Objection, *i.e.* a purported total permanent disability discharge of the underlying FFELP Loan by ED does not appear to be accurate. First, there is no evidence of record to support the Debtors' contention that Tamiko received approval of a TPD request as nothing was even attached to the Objection or filed with the Court. Second, having checked with Nelnet, the servicer for the FFELP Loan, ECMC learned that although the TPD was originally

6

approved, the FFELP Loan was reinstated in May of 2017 because Tamika failed ED's three-year income monitoring period after failing to provide ED with the requisite income verification.[6] Therefore, the FFELP Loan is still due and owing.

Alternatively, ECMC submits that even if the Court determines that Rule 60(b)(1) does not apply, the Court should nevertheless exercise its broad discretion to grant rehearing and vacate the Order under the catch-all provision of Fed. R. Civ. P. 60(b)(6). *See* Fed. R. Civ. P. 60(b)(6)(court is authorized to grant relief for "any other reason that justifies relief."). In this case, where the Klisch Declaration shows that ECMC never received a copy of the Motion or the Notice of Hearing, and the Debtors' own Schedules reflect the student loan debt owed to ECMC as having been active as recently as December, 2019, and the underlying debt was not listed as disputed, unliquidated, or contingent, the Order should be vacated and Claim No. 2 allowed in the full amount as filed.[7]

WHEREFORE, Educational Credit Management Corporation requests that the Court enter an Order that vacates the Court's July 17, 2020 Order (D.E. 64), allows ECMC's Claim No. 2 in the full amount as filed, and that grants ECMC such other and further relief as the Court deems necessary and proper.

---

[6] Granting ECMC's motion would not impose undue prejudice upon the Debtors; rather, it would simply mean that ECMC will receive the same treatment under the confirmed Third Amended Plan as all other general unsecured creditors. Indeed, there is not a single shred of evidence in the Objection that supports the Debtors' contention.

[7] ECMC submits that the Court may also be able to grant relief pursuant to Fed. R. Civ. P. 60(b)(3). The basis for relief set forth in the Objection is wholly inconsistent with the Debtors' own Schedules (that were filed and signed under penalty of perjury) where they listed the student loan debt to ECMC in a specific amount, and for an account having been active as recently as December, 2019. Again, the Debtors did not list the debt as disputed, unliquidated or disputed, and did not indicate anything about a TPD discharge.

Dated: August 13, 2020

**SHAWDE & EATON, P.L.**

Attorneys for ECMC
1792 Bell Tower Lane
Weston, Florida 33326
Telephone: (305) 376-3176

By: /s/ John D. Eaton
      John D. Eaton
      Florida Bar No. 0861367
      jeaton@shawde-eaton.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion was served on August 13, 2020, via CM/ECF Transmission, to Drake Ozment, Esq., Counsel for the Debtors, 2001 Palm Beach Lakes Blvd., Suite 500, West Palm Beach, Florida 44409, and to all other CM/ECF registered users in this case.

By: /s/ John D. Eaton
     John D. Eaton

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

**ROBERT WALKER, and
TAMIKO PEELE,**

      Debtors.
_____/

Case No. 20-11431-EPK

Chapter 13

## DECLARATION OF KERRY KLISCH

I, Kerry Klisch, having first been duly sworn according to law, makes oath upon her personal knowledge as set forth herein, and states as follows:

1. I am a Litigation Specialist at ECMC Shared Services Company ("ECMCSSC"), and in such capacity, I have personal knowledge of the information set forth herein. ECMCSSC is a wholly-owned subsidiary of ECMC Group. ECMCSSC is a limited liability company that consolidated shared corporate services of the ECMC family group of companies, including the provision of legal services for Educational Credit Management Corporation ("ECMC"), which is also a wholly-owned subsidiary of ECMC Group.

2. ECMC is a guarantor in the Federal Family Educational Loan Program ("FFELP") and acts as a specialized guarantor in that it accepts assignment from other guaranty agencies in the FFELP where a borrower has filed bankruptcy and/or has initiated an adversary proceeding regarding the student loan debt owed.

1

Exhibit "1"

3. In order to fulfill my responsibilities, I have access to electronic records maintained by ECMC.[1] The records contained in ECMC's database are made at or near the time of the transaction recorded, by or from information transmitted by a person with knowledge of the transaction, and are kept in the course of ECMC's regularly conducted business. In addition, I have access to records maintained by the United States Department of Education ("ED") in the National Student Loan Data System ("NSLDS") which provides a centralized view of a borrower's federal student aid, including loans and grants that he or she has received.

4. On August 3, 2020, I conducted a review of ECMC's records with respect to the consolidated FFELP Loan that is owed to ECMC by Debtor Tamiko Peele ("Tamiko") after ECMC received a copy of the Court's July 17, 2020 *Order Sustaining Objection to Claim Filed by Educational Credit Management Corporation* (the "Order)(D.E. 64) in which the Court sustained an *Objection to Claim on Shortened Notice* (the "Objection")(D.E. 47). In the Order, the Court struck and disallowed ECMC's Proof of Claim No. 2-1 ("Claim No. 2") in the amount of $43,598.20 with respect to the amount Tamiko owes on her non-dischargeable FFELP Loan that was made pursuant to the FFELP.

5. A review of ECMC's records reveals that ECMC never received a copy of the Objection, or the corresponding Notice of Hearing (D.E. 48) that is reflected on the Court's docket. Instead, ECMC's legal department did not learn about the Objection until July 29, 2020, when ECMC's legal department received a copy of the Court's

---

[1] Effective March, 2020, due to the Coronavirus pandemic, ECMC's corporate offices, which are located in Minneapolis, MN, were closed and its employees have been remotely since that time.

2

Order, which reflected that the Court had sustained the "Debtor's Objection to Claim Filed by Educational Credit Management Corp., Claim No. 2 (DE#47)."

6. After receiving the Order, ECMC obtained a copy of the Objection from Pacer and began investigating the matter. On August 10, 2020, the attorney in ECMC's legal department overseeing matters in the state of Florida contacted one of ECMC's outside counsel, John Eaton, who represents ECMC in bankruptcy matters in the state of Florida to address the Order and to file an appropriate motion with the Court.

7. In the Objection, the Debtors objected to Claim No. 2 on the following basis: "Sustain and Strike. The Debtors believe this debt has been discharged through the Total Permanent Disability discharge, provided by the US Department of Education." No exhibits were attached to the Objection to support the Debtors' contention that Tamiko had received a total permanent disability discharge from ED.

8. I have also reviewed ECMC's records with respect to the Debtors' contention of a TPD discharge. According to ECMC's records, ECMC has no record of any such TPD discharge being approved by ED. In addition, nothing contained in the NDSLD for Tamiko reflects ED approving any TPD discharge with respect to her FFELP Loan owed to ECMC.

9. For that reason, I contacted Nelnet, the servicer for Tamiko's FFELP Loan, with respect to the contention that she had received a TPD discharge. I learned that Tamiko was approved for a TPD discharge in 2015, but the FFELP Loan was reinstated in May of 2017 because Tamika failed ED's three-year income monitoring period.

Specifically, Tamiko did not provide ED or the loan servicer with income verification for the time period of January 8, 2016 to January 7, 2017.[2]

10. I further understand that the one-year period that Tamiko had to appeal that decision ended in May of 2018. Therefore, in order to obtain a TPD discharge of the FFELP Loan, Tamiko will need to reapply to have the loan discharged.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that foregoing is true and correct.

By: _Kerry Klisch_ (signature)
Kerry Klisch
Date: 8·13·2020

4836-3923-4408, v. 1

---

[2] If a borrower receives a TPD discharge, the borrower is required to provide ED and/or the loan servicer with income verification for a period of three years after the discharge is granted to confirm that the borrower has not earned income in excess of the poverty guidelines for a family size of 2 in the state that they live in, regardless of actual family size.

4